**LEFMARK MANAGEMENT COMPANY, Petitioner,**

v.

**Winona OLD, Individually and a/n/f of Phillip Albert Fults–Old, Respondent.**

No. 95–0983.

Supreme Court of Texas.

Argued Sept. 3, 1996.

Decided May 16, 1997.

Mike Morris, Houston, for petitioner.

Andrew L. Drapkin, Houston, for respondent.

CORNYN, Justice, delivered the opinion for a unanimous Court.

In this premises liability case, we decide whether a shopping center's former property

manager owed a legal duty to a tenant's customer who was killed during an armed robbery. Winona Old, whose husband was shot and killed at Shipley Do–Nuts & Flour Supply Company, Inc., sued Shipley Do–Nuts, the Fairbanks Shopping Center, and Lefmark Management Company, the former property manager hired by the shopping center's owner.

The trial court granted summary judgment for Lefmark and then severed that judgment. The court of appeals reversed and remanded for trial on the merits. 908 S.W.2d 16. We determine that Lefmark owed no legal duty to Old under the circumstances of this case. Accordingly, we reverse the judgment of the court of appeals and render judgment for Lefmark.

From 1991 to 1993, a variety of crimes, including several robberies and burglaries, occurred at the Fairbanks Shopping Center, located in Harris County, Texas. On January 19, 1993, the risk manager at a Kroger Food Store located in the same shopping center wrote to Lefmark asking that it conduct a security risk assessment for the property. Before the shopping center's owner terminated its services on April 13, 1993, Lefmark had not conducted such an assessment.

On June 27, 1993, about two months after the owner terminated Lefmark, an armed robbery occurred at the Shipley Do–Nuts in the shopping center. Shipley's was robbed again on July 13, 1993, and during this incident Old's husband was shot and killed.

Old claims that Lefmark knew or should have known that the prevalence of criminal activity, coupled with other physical conditions on the shopping center's premises, was a dangerous condition that exposed her deceased husband to an unreasonable risk of harm. Old alleged that Lefmark breached its duty of due care by failing to eliminate, protect against, or warn others of this condition. Old further alleged that Lefmark created a dangerous condition on the premises because it did not (1) conduct the security risk assessment Kroger Food Stores requested; (2) notify the successor management company about the Kroger letter and the criminal activity at the shopping center; (3)

establish a satisfactory security program for the center; and (4) repair a hole in the fence behind Shipley's that allowed criminals easy access to the property.

In its motion for summary judgment, Lefmark claimed that it owed no duty to protect against criminal acts of third parties because when Old's husband was killed, Lefmark did not own, occupy or control the premises. In response, Old contended that even if Lefmark was not in control of the premises on the date in question, Lefmark nevertheless created the dangerous condition, failed to remedy the condition, and failed to give notice of the condition to its successor.

■ Tort liability depends on both the existence of and the violation of a duty. *Centeq Realty, Inc. v. Siegler,* 899 S.W.2d 195, 197 (Tex.1995); *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990). Whether a duty exists is a question of law for the court to decide under the facts surrounding the occurrence in question. *Centeq Realty,* 899 S.W.2d at 197.

■ As a general rule, a landowner or one who is otherwise in control of the premises must use reasonable care to make the premises safe for the use of business invitees. *See Smith v. Henger,* 148 Tex. 456, 226 S.W.2d 425, 431 (1950). This duty includes warning invitees of known hidden dangers that present an unreasonable risk of harm. *City of Beaumont v. Graham,* 441 S.W.2d 829, 834 (Tex.1969). Ordinarily, this duty does not include the obligation to prevent criminal acts of third parties who are not subject to the premises occupier's control. *Walker v. Harris,* 924 S.W.2d 375, 377 (Tex. 1996); *Exxon Corp. v. Tidwell,* 867 S.W.2d 19, 21 (Tex.1993); *El Chico Corp. v. Poole,* 732 S.W.2d 306, 313–14 (Tex.1987). This rule, however, is not absolute. One who controls the premises does have a duty to use ordinary care to protect invitees from criminal acts of third parties if he knows or has reason to know of an unreasonable and foreseeable risk of harm to the invitee. *Centeq Realty,* 899 S.W.2d at 197; *Exxon,* 867 S.W.2d at 21; *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 550 (Tex.1985). This duty, we have emphasized, is commen-

surate with the right of control over the property. *See Exxon,* 867 S.W.2d at 21.

■ Under certain circumstances, however, even one not in control of the property at the time of the injury may owe a duty to make the premises safe. One who agrees to make safe a known dangerous condition of real property owes a duty of due care. *City of Denton v. Page,* 701 S.W.2d 831, 835 (Tex. 1986) (citing *Gundolf v. Massman–Johnson,* 473 S.W.2d 70 (Tex.Civ.App.—Beaumont 1971), writ ref'd n.r.e., 484 S.W.2d 555 (Tex. 1972) (per curiam)). And a person who creates a dangerous condition owes the same duty. *Id.* (citing *Strakos v. Gehring,* 360 S.W.2d 787 (Tex.1962)).

■ The summary judgment evidence reveals that until April 13, 1993, Lefmark was the property manager for the Fairbanks Plaza Shopping Center. In that capacity, we assume that Lefmark had sufficient control over the premises for a duty of care to arise to invitees like Old. *See City of Denton,* 701 S.W.2d at 835. But on the date of the incident, Lefmark did not own, occupy, manage, possess or otherwise have any control of the shopping center. Absent the essential element of control on the date in question, Lefmark owed no duty under the general rule to keep the shopping center safe. For a duty to exist, Lefmark must have owed a duty under some exception to the general rule.

The court of appeals held that, although Lefmark was no longer in control of the premises, it owed a duty to disclose to the subsequent management company any dangerous conditions affecting the shopping center, including the prevalence of criminal activity, and the contents of the Kroger letter. For this holding, the court of appeals relied on the RESTATEMENT (SECOND) OF TORTS § 353 (1965), which provides:

(1) A vendor of land who conceals or fails to disclose to his vendee any condition, whether natural or artificial, which involves unreasonable risk to persons on the land, is subject to liability to the vendee and others upon the land with the consent of the vendee or his subvendee for physical harm caused by the condition after the vendee has taken possession, if

(a) the vendee does not know or have reason to know of the condition or the risk involved, and

(b) the vendor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to believe that the vendee will not discover the condition or realize the risk.

(2) If the vendor actively conceals the condition, the liability stated in Subsection (1) continues until the vendee discovers it and has reasonable opportunity to take effective precautions against it. Otherwise the liability continues only until the vendee has had reasonable opportunity to discover the condition and to take such precautions.

Even though Lefmark was not a "vendor," the court of appeals held that Lefmark nevertheless "transferred" the right of possession and control to the new management company without disclosing the dangerous condition, thereby breaching its duty to disclose under section 353. 908 S.W.2d at 20.

We disagree with this conclusion for several reasons. First, we have never adopted section 353, even though it has been cited by and relied upon by several courts of appeals. *See First Fin. Dev. Corp. v. Hughston,* 797 S.W.2d 286, 290–91 (Tex.App.—Corpus Christi 1990, writ denied); *Davis v. Esperado Mining Co.,* 750 S.W.2d 887, 888 (Tex. App.—Houston [14th Dist.] 1988, no writ); *Moeller v. Fort Worth Capital Corp.,* 610 S.W.2d 857, 861 (Tex.Civ.App.—Fort Worth 1980, writ ref'd n.r.e.); *Beall v. Lo–Vaca Gathering Co.,* 532 S.W.2d 362, 365 (Tex.Civ. App.—Corpus Christi 1975, writ ref'd n.r.e.); *see also Roberts v. Friendswood Dev. Co.,* 886 S.W.2d 363, 367–68 (Tex.App.—Houston [1st Dist.] 1994, writ denied) (citing *First Financial,* 797 S.W.2d at 291).

But even assuming that we were to adopt section 353, it does not apply to these facts. Section 353 is limited in application to "vendors" of land. While section 353 does not define "vendor," other sections of the RESTATEMENT employing that term refer only to a former owner of land. *See* RESTATEMENT (SECOND) OF TORTS § 354 (discussing the ap-

plicability of the rules stated in RESTATEMENT (SECOND) OF TORTS §§ 351–53). As we have noted, Lefmark never owned the premises in question.

Old nevertheless urges us to adopt a more expansive meaning of the term "vendor" to include any "transferor" of land. She argues that because Lefmark transferred possession and control of the premises to its successor, it should be liable under section 353. None of the Texas cases citing section 353 supports this contention. Those cases involve either former owners, *Roberts*, 886 S.W.2d at 366; *First Financial*, 797 S.W.2d at 290–91; *Davis*, 750 S.W.2d at 888; *Moeller*, 610 S.W.2d at 858, or former occupiers who transferred exclusive physical possession, use, and control of the land back to the owner. *Beall*, 532 S.W.2d at 365. In contrast, Lefmark was not an owner or occupier with exclusive possession of the property.

Nor is Lefmark a "transferor" in the sense that Old urges and in the sense used by the courts of appeals cited above. For example, unlike *Beall*, in which a lessee was held liable for failing to warn the owner of a dangerous condition when the lessee transferred possession back to the owner, Old urges liability for a property manager's failure to warn a subsequent manager. For Lefmark to be liable as a transferor, there must have been a transfer from Lefmark to its successor. Old's own pleadings indicate that Lefmark did not transfer control of the property to the successor management company, and so no duty to warn that company could arise under section 353.

We also note that the American Law Institute's articulated rationale for the duty placed on vendors under section 353 does not apply to a property manager like Lefmark. Section 353 is grounded on the premise that a vendor who does not inform a vendee about a latent dangerous condition is engaging in an "implied misrepresentation." RESTATEMENT (SECOND) OF TORTS § 354 cmt. b. Liability of a vendor who conceals a dangerous condition arises, at least in part, because the vendor likely intended to induce the buyer to make a purchase he or she would not have made with full knowledge of the danger. RESTATEMENT (SECOND) OF TORTS § 353 cmt.

d. The same cannot be said of a nonowner property manager. Unless a manager has breached its contract by allowing a dangerous condition to persist, it has nothing to gain by misrepresenting the condition of the property at the end of its tenure, as it is merely relinquishing control of the premises to the owner. This rationale does not justify extending a duty to an independent property manager under these facts.

Old further argues two additional bases for Lefmark's liability. Old asserts that even if Lefmark was not in control of the premises on the date of the armed robbery, Lefmark is nevertheless liable because it created the dangerous condition or because it agreed to make safe a known dangerous condition but failed to do so.

■ In this case, however, we fail to see the basis for the claim that Lefmark *created* the likelihood of the criminal activity at Shipley Do–Nuts that resulted in Mr. Old's death. The allegations related to this theory of recovery were that Lefmark: (1) failed to conduct a security risk assessment at the shopping center after receipt of the Kroger letter; (2) failed to notify its successor of the Kroger letter or the history of criminal activity at the center; (3) failed to provide an adequate security program; and (4) failed to repair a three to four-foot-wide hole in the shopping center's fence directly behind Shipley's, thereby allowing easy access to the center by criminals. As a matter of law, even if true, these allegations do not raise a genuine issue of material fact that Lefmark created a condition that permitted or brought into being the criminal actions that resulted in Mr. Old's death or that Lefmark had a continuing duty to make the alleged dangerous condition safe after its services were terminated by the shopping center's owner.

Accordingly, we reverse the judgment of the court of appeals and render judgment that Old take nothing from Lefmark.

OWEN, J., filed a concurring opinion.

OWEN, Justice, concurring.

I fully join in the Court's opinion and judgment. I write separately only to clarify that in concurring in the generalized state-

ments in this and other of our decisions regarding responsibility for the criminal acts of third parties, I do not intend to convey the impression that those articulations have fully defined the extent of the duty owed by an employer, landlord, business owner, or possessor of property when the danger of injury or death from a violent criminal act is, in a legal sense, foreseeable. I do not construe our decisions to shift the responsibility for police protection from law enforcement agencies to the private sector in areas where violent crimes have occurred.

In several decisions, we have said that a landowner or possessor of property has a duty to exercise reasonable care to protect invitees on the premises from criminal acts of third parties if the landowner knows or has reason to know of an unreasonable risk of harm to the invitee. *See, e.g., Exxon Corp. v. Tidwell,* 867 S.W.2d 19, 21 (Tex.1993); *see also Walker v. Harris,* 924 S.W.2d 375, 377 (Tex.1996); *Centeq Realty, Inc. v. Siegler,* 899 S.W.2d 195, 197 (Tex.1995). We have also said that a landlord owes the same duty to tenants and to employees of tenants when the landlord has the right of control over the leased premises or common areas. *Exxon,* 867 S.W.2d at 21.

I agree with these general statements. Employers and possessors of premises should shoulder some responsibility for the protection of those at the workplace or on the premises from criminal acts. However, in an increasingly violent society, in which crime may be visited upon virtually anyone at any time or place, there should be some certainty and predictability about what actions will satisfy the duty of care. Our general statements give little guidance other than "reasonable" or "ordinary care." We have not yet been called upon to consider in any detail the extent of the duty to take precautions against the criminal acts of third parties when violent crime is "foreseeable." The issue is a difficult one.

Other courts have identified competing principles and policies that arise when considering the imposition of a duty on a landowner or possessor of premises to protect against the criminal acts of third parties. In an early and frequently cited case in which a deliveryman had been assaulted one afternoon in an elevator of a large housing project, the Supreme Court of New Jersey concluded that the housing authority did not have a duty to provide police protection. *Goldberg v. Housing Auth.,* 38 N.J. 578, 186 A.2d 291, 298–99 (1962). That court applied the standard of care that would apply to a private landowner and was persuaded by several factors. First, the court saw the police function as a governmental one. *Id.,* 186 A.2d at 296. Second, the inevitable vagueness of the proposed duty was problematic. As that court put it, "[f]airness ordinarily requires that a man be able to ascertain in advance of a jury's verdict whether the duty is his and whether he has performed it." *Id.* at 297. The court posed a series of questions about when the duty might arise and how it might be discharged and then reflected: "Must the owner prevent *all* crime? We doubt that any police force in the friendliest community has achieved that end. How then can the owner know what is enough to protect the tenants in their persons and property?" *Id.*

The New Jersey court was also concerned about the issue of causation: "It must be remembered that police protection does not, and cannot, provide assurance against all criminal attacks, and so the topic presupposes that inevitably crimes will be committed notwithstanding the sufficiency of the force. Hence the question of proximate cause is bound to be of exceptional difficulty." *Id.*

Finally, the court recognized social and economic implications: .

> If the owner must provide [doormen], every insurance carrier will insist that he do it. The bill will be paid, not by the owner, but by the tenants. And if, as we apprehend, the incidence of crime is greatest in the areas in which the poor must live, they, and they alone, will be singled out to pay for their own police protection. The burden should be upon the whole community and not upon the segment of the citizenry which is least able to bear it.

*Id.* at 298. The New Jersey court accordingly refused to say that an owner must provide security personnel "at the tenants' ultimate

cost, on the pain of liability for damages." *Id.* at 299.

Other decisions reflect a contrary viewpoint and weigh these same factors much differently, as in the case of *Kline v. 1500 Massachusetts Avenue Apartment Corp.*, 439 F.2d 477 (D.C.Cir.1970). The District of Columbia Circuit held not only that a landlord had a duty to provide security personnel in an apartment complex, but that the duty had been breached *as a matter of law. Id.* at 478. There had been assaults and robberies perpetrated against tenants of an apartment building in and from the common hallways. The court found the risk of criminal assault to be "entirely predictable," and because the owner was the only one with the power to secure the common passageways, the court found a duty to do so existed. *Id.* at 483. The court rejected the concerns expressed in *Goldberg,* holding that the rationale faltered when applied to conditions of modern-day urban apartment living. *Id.* at 481. The District of Columbia Circuit recognized that an owner was not an insurer, but said that "he certainly is no bystander." *Id.* The court distinguished *Goldberg* by saying that the New Jersey court was using the word "foreseeable" interchangeably with the word "possible." *Id.* at 483. However, this seems to me to beg the question. Assuming that there is foreseeability in the sense of legal foreseeability, not just a possibility, the factors that the *Goldberg* court considered have a place in the analysis.

These are just two of the earlier decisions in this arena, and the struggle to achieve the appropriate balance continues. Indeed, the Supreme Court of New Jersey retreated from its *Goldberg* decision in *Butler v. Acme Markets, Inc.*, 89 N.J. 270, 445 A.2d 1141, 1145–46 (1982) (distinguishing the rationale of *Goldberg* and holding that in the absence of a warning about previous incidents in a grocery store parking lot, the issue of whether a single security guard was sufficient was a question for the jury). However, at least one jurisdiction has begun to head in the other direction, at least in some measure, after rethinking its prior pronouncements. In *Ann M. v. Pacific Plaza Shopping Center*, 6 Cal.4th 666, 25 Cal.Rptr.2d 137, 146, 863 P.2d 207, 216 (1993), the Supreme Court of

California, in bank, held that under the facts of the case before it, the owner of a shopping center did not owe a duty to provide security patrols in the common areas. In *Ann M.*, the employee of a tenant was raped one morning shortly after she opened the photo shop in which she worked. Prior to the assault, there had been demands by the tenants for greater security, including patrols, and for the eviction of vagrants who frequented the common areas. *Id.* at 139–40, 863 P.2d at 209–10. The California court concluded that the existence and scope of the duty to provide protection from foreseeable third-party crime is a question of law to be determined in part by weighing the foreseeability of the harm against the burden of the duty to be imposed. *Id.* at 145, 863 P.2d at 215. When the burden of preventing future harm is great, the court reasoned, a high degree of foreseeability may be required. A lesser degree of foreseeability may be required when there are strong policy reasons for preventing the harm or when the harm can be prevented by simple means. *Id.* On the issue of security guards, the court said this:

> While there may be circumstances where the hiring of security guards will be required to satisfy a landowner's duty of care, such action will rarely, if ever, be found to be a "minimal burden." The monetary costs of security guards is not insignificant. Moreover, the obligation to provide patrols adequate to deter criminal conduct is not well defined. "No one really knows why people commit crime, hence no one really knows what is 'adequate' deterrence in any given situation." Finally, the social costs of imposing a duty on landowners to hire private police forces are also not insignificant. For these reasons, we conclude that a high degree of foreseeability is required in order to find that the scope of a landlord's duty of care includes the hiring of security guards.

*Id.* (citations omitted).

In reaching this conclusion, the court modified the approach it had taken in *Isaacs v. Huntington Memorial Hospital*, 38 Cal.3d 112, 211 Cal.Rptr. 356, 362, 695 P.2d 653, 659 (1985), which had rejected the requirement

that there be "prior similar incidents" before imposing a duty. Foreseeability of the criminal conduct under *Isaacs* was to be determined in light of all the circumstances. *Id.* In *Ann M.*, the court revived the "prior similar incidents" requirement, holding that "the requisite degree of foreseeability rarely, if ever, can be proven in the absence of prior similar incidents of violent crime on the landowner's premises." 25 Cal.Rptr.2d at .145, 863 P.2d at 215. The prior incidents in *Ann M.*, said the court, were not comparable to rape. The California court did indicate, however, that security guards may have been appropriate under the facts in *Isaacs* because there was evidence of prior violent incidents. *Id.*

There are many other cases that deal with liability for the criminal acts of third parties, and a number of commentators have written on the subject.[1] It is not my intention to engage in a comprehensive survey of the law or even to survey all the factors that bear upon the question of duty in the context of criminal acts of third parties. I write only to highlight some very difficult issues in this area of the law, none of which this Court has addressed or resolved by its broad statements about the duty owed.

The seminal decision in Texas in the area of liability for the criminal acts of third parties is *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546 (Tex.1985). It is the only case decided by this Court in which we actually held that a duty was owed by a possessor of property regarding the criminal acts of third parties and articulated what that duty was. However, in *Nixon* the duty itself and its parameters were provided by an ordinance. A ten-year-old girl had been abducted from in front of her apartment complex and taken across the street directly to a vacant apartment in another complex, where she was raped. The apartment in which she was assaulted had no glass in the windows and the door was off its hinges in violation of a city ordinance that required an owner to keep the doors and windows of a vacant structure secured to prevent unauthorized entry. *Id.* at 547–48. This Court held that the ordinance established minimum standards for landowners and that an unexcused violation of the ordinance constituted negligence as a matter of law because the ordinance was meant to deter criminal activity and the victim fell within the class to be protected. *Id.* at 549. The Court then proceeded to examine the question of proximate cause.

It was in the discussion of proximate cause, not duty, that the Court focused on foreseeability in *Nixon.* The Court found evidence of prior violent crimes at the apartment complex. In this context we said that evidence of specific previous crimes on or near the premises raises a fact issue on foreseeability. *Id.* at 550. Later in the opinion, we reiterated that with the "litany" of prior crimes, including other violent and assaultive crime, a fact issue existed on the issue of "foreseeability of this crime as it relate[d] to the proximate cause issue." *Id.* at 551.

Foreseeability, of course, is a factor in both proximate cause and duty. *Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 775 (Tex.1995) (foreseeability is an element of proximate cause); *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990) (foreseeability is a factor in determining whether a duty is owed). Generally, the issue of proximate cause tends to be a fact question, although some causes in fact do not constitute legal causation as a matter of law. *See Union Pump*, 898 S.W.2d at 775–76. Duty, on the other hand, is a question of law for the courts that is to be determined from

---

1. *See, e.g.*, G. Robert Friedman & Kathleen J. Worthington, *Trends in Holding Business Organizations Liable for the Criminal Acts of Third Persons on the Premises: A Texas Perspective*, 32 S. Tex.L.Rev. 257 (1991); B.A. Glesner, *Landlords As Cops: Tort, Nuisance & Forfeiture Standards Imposing Liability on Landlords for Crime on the Premises*, 42 Case W.Res.L.Rev. 679 (1992); Laura DiCola Kulwicki, Comment, *A Landowner's Duty to Guard Against Criminal Attack: Foresee-ability and the Prior Similar Incidents Rule*, 48 Ohio St.L.J. 247 (1987); Donna Lee Welch, Comment, Ann M. v. Pacific Plaza Shopping Center: *The California Supreme Court Retreats from Its 'Totality of the Circumstances' Approach to Premises Liability*, 28 Ga.L.Rev. 1053 (1994); Michael J. Yelnosky, Comment, *Business Inviters' Duty to Protect Invitees from Criminal Acts*, 134 U.Pa. L.Rev. 883 (1986).

the facts surrounding the occurrence in question. *Greater Houston Transp.*, 801 S.W.2d at 525 (citing *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 312 (Tex.1983)). Foreseeability is a consideration to be weighed by the court in determining if a duty is owed and the nature of that duty, but other factors include the risk and the likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant. *Id.*

As already noted, none of our decisions since *Nixon* have held that a duty to take measures to protect against the criminal acts of third parties existed under the particular facts before the Court. In *Exxon*, 867 S.W.2d at 21–23, the holding of the Court concerned the right of control. The right of control was also the issue in *Centeq Realty*, 899 S.W.2d at 197–99. We assumed without deciding in *Centeq* that a condominium owner's association owed a duty to residents to provide "adequate security." *Id.* at 198. Our decision in *Walker*, 924 S.W.2d at 377, likewise declined to express an opinion on whether the case fell within an exception to the no-duty rule. We decided *Walker* on the basis that "[w]hatever duty a lessor may have," there can be no duty in the absence of a foreseeable risk of harm from violent crime on the premises. *Id.* The fatal stabbing in *Walker* was not foreseeable as a matter of law. *Id.* at 378.

Accordingly, other than in *Nixon*, our Court has not considered the extent of the duty that a landlord owes when the leased premises are located in an area where assaults, murders, or drive-by shootings have occurred. And, other than in *Nixon*, we have not had occasion to opine on what specific actions may or may not be necessary to discharge the duty to take reasonable steps to protect against the criminal acts of third parties. With regard to residential property: Are locks on doors and windows and adequate lighting enough? Are security guards or security cameras or both required? Must the premises be enclosed by a security fence with guards at all entrances? Are any of these measures designed to prevent injury from a drive-by shooting or from the detona-

tion of an explosive in an adjoining street? What are the implications for those of low income seeking affordable housing? Similarly, with regard to places of business: How much security is enough? What are the implications for small businesses in economically depressed areas? Does an employer have a duty to escort employees between its place of business and their transportation if the business is located in an area where rapes and other assaults have occurred? Does it make a difference whether an employee parks in a lot adjoining the business or walks ten blocks to a bus stop or subway station? These are just some of the types of questions that have not yet confronted this Court. Foreseeability is the beginning, not the end, of the analysis in determining the extent of the duty to protect against criminal acts of third parties.

Courts across the country agree that an owner or possessor of property is not an insurer of the safety of those on the premises. *See, e.g., Exxon*, 867 S.W.2d at 21 (stating that employer is not insurer of employee's safety); *Ann M.*, 25 Cal.Rptr.2d at 145–46, 863 P.2d at 215–16 (holding that to impose duty without requisite degree of foreseeability would force landlords to become insurers of public safety); *Kline*, 439 F.2d at 487 (emphasizing that landlord is by no means an insurer of the safety of tenants). On the other hand, public policy demands that some measures be taken by the private sector to prevent injury from the foreseeable criminal acts of third parties. Finding the appropriate middle ground between these two principles is where the difficulty lies.

Unfortunately, our Court has been called upon to decide an increasing number of cases that involve criminal acts, and they are not limited to premises cases. *See, e.g., Farmers Texas County Mut. Ins. Co. v. Griffin*, 939 S.W.2d 139 (Tex.1997) (drive-by shooting); *National Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139 (Tex. 1997) (shooting from an automobile); *Golden Spread Council, Inc. # 562 of The Boy Scouts of Am. v. Akins*, 926 S.W.2d 287 (Tex.1996) (sexual molestation of a young boy); *Kerrville State Hosp. v. Clark*, 923 S.W.2d 582 (Tex.1996) (brutal murder of

woman by her husband); *Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472 (Tex. 1995) (sexual molestation of a young boy). I suspect and regret that the issue of who is liable for criminal acts other than the criminal will be a recurring one.