**DICKINSON ARMS–REO, L.P.,
et al., Petitioners,**

v.

**Joe Winston CAMPBELL,
et al., Respondents.**

**No. 99–1111.**

Supreme Court of Texas.

Oct. 19, 2000.

Kelley Jewell Friedman, John Michael Johanson, Johanson & Fairless, L.L.P., Sugar Land, Jennifer Bruch Hogan, Kevin H. Dubose, Roger Townsend, Hogan Dubose & Townsend, L.L.P., Houston, for Petitioners.

E.A. "Trey" Apffel, III, Law Office of E.A. "Trey" Apffel, III, Texas City, David W. Holman, Holman Law Firm, Houston, Roy Talmadge Hammock, Law Office of

E.A. "Trey" Apffel, III, Texas City, for Respondents.

Justice HECHT, joined by Justice OWEN, dissenting from the denial of the petition for review.

The essential and undisputed facts of this case are as follows. Jeremy Gartrell, a sixteen-year-old with a long history of delinquency, attended what the court of appeals called a teenage gang "get-together"[1] at a friend's room in the Dickinson Arms Apartments in Dickinson, Texas, a small town (pop.17,578) between Houston and Galveston. When Gartrell left the "get-together" sometime after midnight, he noticed in the parking lot a pickup truck in which Joe Darwin Campbell was sitting, waiting for his girlfriend, a resident of the apartments, to arrive. Gartrell suddenly decided to hijack the pickup, and armed with a .22–caliber pistol, he shot and killed Campbell. Never before had there been a murder or a car-jacking at the Dickinson Arms Apartments. Indeed, no one had been murdered in all of Dickinson for at least five years. In the three and one-half years preceding the incident, police received hundreds of calls from the apartments and reported 184 crimes, including twenty burglaries, thirteen auto thefts, eight other thefts, and thirteen assaults. None of the crimes reported were "violent crimes" as defined by the FBI—murder, rape, robbery, or aggravated assault. In one instance shots were fired, but no one was injured. Some residents had complained that other residents and their visitors seemed dangerous, but the plaintiffs' expert could not identify a single stranger-initiated personal crime that had ever occurred at the apartments. In the vicinity, there had been, as the court of appeals summarized the evidence, " 'quite a few motor vehicle burglaries, stolen vehicles, lots of vandalism and assault calls' ", " '[q]uite a bit of drug activity and prostitutes' ", a gunfight in which no one was injured, and " 'a lot of family violence, assaults, child abuse, you name it' ".[2]

Gartrell was convicted of murder and sentenced to prison. Campbell's beneficiaries sued respondents, the owners of the apartments, alleging that their negligence in letting apartments to dangerous persons and in failing to provide adequate security for the premises caused Campbell's death. The district court rendered judgment on a verdict favorable to the plaintiffs, and the court of appeals affirmed, over the dissent of Justice Nuchia.[3] A suggestion for rehearing en banc originating within the court was denied, with Chief Justice Schneider and Justice Taft dissenting. The owners of the Dickinson Arms apartments petitioned this Court for review.

Recently, the extent to which a property owner may be liable for a crime committed on the premises has troubled Texas courts. Statutes or ordinances sometimes set specific safety standards on certain property,[4] but the common law imposes no duty on landowners to prevent strangers from entering the premises and committing crimes against invitees unless the entry and injury were reasonably foreseeable to the owner.[5] An absolute duty would make landowners guarantors of insular safety on their premises, something they frequently cannot reasonably, or perhaps even possibly, do. On the other hand, in many instances one who invites others onto his property must take reasonable steps to ensure their safety from foreseeable dan-

1. 4 S.W.3d 333, 335.

2. *Id.* at 338.

3. 4 S.W.3d 333.

4. *See, e.g., Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546 (Tex.1985).

5. *Timberwalk Apartments, Partners, Inc. v. Cain,* 972 S.W.2d 749 (Tex.1998); *Lefmark Management Co. v. Old,* 946 S.W.2d 52, 53 (Tex.1996); *Walker v. Harris,* 924 S.W.2d 375, 377 (Tex.1996); *Centeq Realty, Inc. v. Siegler,* 899 S.W.2d 195, 197 (Tex.1995); *Exxon Corp. v. Tidwell,* 867 S.W.2d 19 (Tex.1993).

gers, including the criminal conduct of third persons. Whether a landowner has a duty in particular circumstances is a question of law for the court.[6] In *Timberwalk Apartments, Partners, Inc. v. Cain,*[7] we set threshold standards for determining the legal issue of whether third-party criminal conduct is foreseeable so that an owner must anticipate and protect invitees against it. These standards were the proximity, recency, frequency, similarity, and publicity of criminal conduct.[8]

Applying these standards here, as Justice Nuchia carefully explained in dissent below, respondents had no reason to anticipate that a non-resident would murder a visitor in the parking lot. There had been no murder in the entire city for years, and no murder ever on the premises. The majority of the appeals court panel suggests that general crime activity in the area was enough to put respondents on notice that they should try to prevent murders at the apartments. In other words, since crime happens in Dickinson, a murder might happen at the Dickinson Arms Apartments, and the owner should be liable for the consequences if it does. A correct application of *Timberwalk* does not permit this result.

So why doesn't the Court grant the petition for review? The dispositive issue is a legal one—whether petitioners owed respondents' decedent a duty of care—that Texas courts continue to struggle with. The case has been thoroughly briefed on both sides by distinguished, experienced appellate counsel. The answer, in my view, is not about the law, but about the Court's increasing exercise of its discretion to deny petitions for review for non-legal reasons.[9] Truth is, had the court of appeals reached the opposite conclusion, over dissent by a member of the panel and dissents from rehearing en banc—indeed, had the court of appeals split 5–4 for peti-

tioner—and had the plaintiffs petitioned for review, the Court would also have denied their petition, not because the opposite result was right, but because six MEMBERS of the Court simply do not care to say one way or the other. Given the difficulty that the issue presented here continues to cause our courts, a denial of a petition for review cannot be justified on the ground that a result either way is tolerable. But when one is not required to give a legal reason for a vote, one need not have a legal reason.

In communities where crime is high, apartments and businesses simply cannot exist if the landowner must post guards all around and put up security gates and floodlights, all measures that respondents argued for here. The market will not support the cost of such protections. The Dickinson Arms Apartments could well have been made the securest habitation in North America, if only renters would have been willing to pay for such services. A choice between providing security that tenants or customers will not pay for, and providing the only security tenants or customers can afford and being sued for not doing more, is no choice at all. If a predictable common-law rule cannot be established to handle such realities, a legislative solution may be necessary.

I would grant the petition for review in this case and therefore dissent from the Court's order denying it.

---

**6.** *Lefmark,* 946 S.W.2d at 53; *Centeq Realty,* 899 S.W.2d at 197.

**7.** 972 S.W.2d at 757–759.

**8.** *Id.*

**9.** Tex.R.App.P. 56.1.