IN THE SUPREME COURT OF TEXAS











IN THE SUPREME COURT OF TEXAS

 

════════════

No. 07-0091

════════════

 

Trammell Crow Central Texas,
Ltd., Petitioner,

 

v.

 

Maria Gutierrez, Individually
and as Representative of the Estate of Luis Gutierrez; and Karol Ferman as Natural Parent and as Next Friend of Luis Angel
Gutierrez, Respondents

 

════════════════════════════════════════════════════

On Petition for Review from the

Court of Appeals for the Fourth District of Texas

════════════════════════════════════════════════════

 

 

Argued January 17,
2008

 

 

            Chief Justice Jefferson, joined by Justice Hecht, Justice Brister,
and Justice Johnson, concurring. 

 

            The narrow question is whether this
premises owner had a duty to protect this plaintiff from a third party’s
criminal act. The broader dispute concerns the extent to which a decision
affirming the judgment below would require “conspicuous security” at every point
of potential contact between a patron and a criminal. The Court’s approach
would impose on the Quarry Market (and others similarly situated) an obligation
to adopt extraordinary measures to prevent a similar occurrence in the future.
It holds that “[b]ecause the attack on Luis was so
extraordinarily unlike any crime previously committed at the Quarry Market,”
Trammell Crow could not have foreseen it and thus owed no duty to protect
Gutierrez from the attack. While I agree that Trammell Crow had no such duty, I
would conclude not that the attack was unforeseeable, but that the risk of its
occurrence was not unreasonable, and that the consequences of requiring
premises owners to prevent this type of crime would require a measure of
deterrence that is neither feasible nor desirable. Accordingly, I concur in the
Court’s judgment.

            Because a jury found for Gutierrez[1]
on disputed facts, Gutierrez contends we must affirm the courts below. Trammell
Crow, however, asserts it has no duty under the circumstances, even when all
the facts are viewed in favor of the verdict. But the Court must determine
whether giving a jury the option to require premises owners to insure against
brazen criminal attacks appropriately shifts law enforcement to the private
sector. In Timberwalk, we held that “[a] duty
exists only when the risk of criminal conduct is so great that it is both unreasonable
and foreseeable.” Timberwalk
Apartments, Partners, Inc. v. Cain, 972 S.W.2d 749, 756 (Tex. 1998) (emphasis added). The Court’s
focus solely on the latter is misplaced. There were ten violent crimes at the
Quarry Market within the two years preceding Gutierrez’s death; all were
robberies, some involved deadly weapons. Given this evidence, it was
foreseeable that a robbery and murder could occur. 

            Granted, it seems trite to say that
crime is foreseeable solely because it has occurred in the past, but part of
the difficulty in assessing foreseeability lies in
the inability to quantify how many prior crimes make a particular attack
predictable. See, e.g., Robert Weisberg, Preventing Crime: Private
Duties, Public Immunity, 2 J.L. Econ. & Pol’y 365, 374 (2006) (noting that the
prior-similar-incidents test “has been criticized as arbitrary, or at least
unpredictable, because it sets out no metric for the frequency of crimes and
the degree of similarity required”). Moreover, focusing solely on foreseeability overlooks other factors we have held are
pertinent to the existence and scope of a duty. Timberwalk,
972 S.W.2d at 756 (“‘Foreseeability is the beginning,
not the end, of the analysis in determining the extent of the duty to protect
against criminal acts of third parties.’” (quoting Lefmark
Mgmt. Co. v. Old, 946 S.W.2d 52, 59 (Tex.
1997) (Owen, J., concurring))). We must also balance risk, likelihood of
injury, and the consequences of placing the burden on the defendant. General Elec. Co. v. Moritz, ___ S.W.3d ___, ___ (Tex. 2008) (“[D]uty depends on a legal analysis balancing a number of
factors, including the risk, foreseeability, and
likelihood of injury, and the consequences of placing the burden on the
defendant.”). 

            While the prior-similar-incidents
inquiry includes some consideration of risk and likelihood of injury, it does
not consider the attendant burdens of requiring premises owners to prevent all
crimes that are similar to prior attacks, nor does it account for crimes that
may have been eminently foreseeable despite their never having occurred at a
particular place before. See, e.g., Michael J. Yelnosky, Comment, Business Inviters’ Duty to
Protect Invitees from Criminal Acts, 134 U.
Pa. L. Rev. 883, 905
(1986) (observing that the test produces “extraordinarily arbitrary results”
and “deni[es] . . .
compensation to the first victim”); see also Ann M. v. Pac. Plaza Shopping
Ctr., 863 P.2d 207, 214-15 (Cal. 1993); Posecai
v. Wal-Mart Stores, Inc., 752 So.2d 762, 767 (La. 1999) (adopting
balancing test, which “seeks to address the interests of both business
proprietors and their customers by balancing the foreseeability
of harm against the burden of imposing a duty to protect against the criminal
acts of third persons”); Whittaker v. Saraceno,
635 N.E.2d 1185, 1188-89 (Mass. 1994) (noting that “[t]he possibility of
criminal conduct occurring is present in almost every aspect of daily life” and
“[i]n that sense the possibility of a violent attack
is always able to be foreseen,” but holding that “society should not place the
burden of all harm caused by random violent criminal conduct on the owner of
the property where the harmful act occurred, without proof that the landowner
knew or had reason to know of a threat to the safety of persons lawfully on the
premises against which the landowner could have taken reasonable preventive
steps”); McClung v. Delta Square Ltd. P’ship,
937 S.W.2d 891, 899, 902 (Tenn. 1996) (adopting a balancing test that considers
“both the economic concerns of businesses and the safety concerns of customers
who are harmed due to the negligence of one seeking their business,” in lieu of
the “fatally flawed” prior-similar-incidents test). A duty analysis should
include consideration of these factors as well. 

            Gutierrez argues (and Trammell
Crow’s expert agreed) that had there been a conspicuous security officer posted
at the time and place of this fatal attack, the crime may not have taken place.
I would hold that the number of similar crimes here, however, while perhaps
sufficient to make the attack foreseeable, would not require, in response,
snipers on the roof or uniformed officers on every corner. The question is the
extent to which we should require premises owners—even those who have
experienced crime in the past—to provide the same level of security that airports enlist to prevent terrorism. Life in a free
society carries a degree of risk. That risk can be virtually eliminated by a
pervasive military presence, but the burdens—both in terms of the economic cost
to premises owners and in the oppressive climate a police state spawns—would be
prohibitive. 

            Because the relatively few incidents
of violent crime at the Quarry Market during the two-year period before
Gutierrez’s death did not pose an unreasonable risk of harm, and in light of
the tremendous burden that would be required to prevent such brazen attacks, I
would hold that Trammell Crow owed Gutierrez no duty to prevent this crime. See
Timberwalk, 972 S.W.2d at 756 (“[C]riminal conduct of a specific nature at a particular
location is never foreseeable merely because crime is increasingly random and
violent and may possibly occur almost anywhere, especially in a large city. If
a landowner had a duty to protect people on his property from criminal conduct
whenever crime might occur, the duty would be universal. This is not the
law.”). I agree with the dissenting justices below that recognizing such a duty
would “replace [Timberwalk and City
of Keller] with a rule of strict liability for premises owners.” 220 S.W.3d at 43 (Duncan, J., dissenting). I concur in the
Court’s judgment. 

 

                                                

                                                                                                ___________________________________

                                                                                                Wallace
B. Jefferson

                                                                                                Chief
Justice

 

OPINION DELIVERED: August 29, 2008                                       

 






















[1] For brevity, we use “Gutierrez” to refer to both
Luis Gutierrez and the respondents in this case.