Opinion issued May 18, 2017



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-16-00949-CV

_____

**MICHAEL HENDERSON, Appellant**

**V.**

**CC-PARQUE VIEW, LLC D/B/A PARQUE VIEW APARTMENTS, ASSET PLUS CORPORATION, ASSET PLUS COMPANIES, LP, ASSET PLUS REALTY CORPORATION, AND ASSET PLUS USA, LLC, Appellees**

On Appeal from the 190th District Court
Harris County, Texas
Trial Court Case No. 2015-52958-A

## MEMORANDUM OPINION

An independent-contractor security guard shot Michael Henderson with a rubber bullet during an early morning encounter in the parking lot of Henderson's

apartment complex. Henderson sued his landlord, Parque View Apartments, its management companies, and Ranger Guard and Investigations, the security company that had contracted to provide security services at Parque View. Henderson claims that Parque View and its management ("Parque View") breached (1) a duty of care in hiring and retaining the Ranger Guard that shot him and (2) a duty to notify apartment residents that security would be patrolling the property.

Parque View moved for summary judgment on traditional grounds, contending that: (1) Ranger Guard was an independent contractor over which it exercised no control, and thus Parque View owed no duty to Henderson with respect to Ranger Guard's activities; and (2) Parque View had no duty to warn Henderson of the presence of armed security at the complex. The trial court granted Parque View's motion. The trial court severed the summary judgment from the remaining claims against Ranger Guard and Henderson appeals, challenging the propriety of the summary judgment on both grounds. We affirm.

## Background

Parque View is a 352-unit apartment complex located in Harris County near the Texas Medical Center. Responding to reports of increased criminal activity in the area, Parque View contracted with Ranger Guard to provide private security services for the apartment complex. The contract between Parque View and Ranger Guard declares that "Ranger Guard and Investigations is an independent contractor

2

of [Parque View]." Ranger Guard warrants that its services "shall be performed by personnel possessing competency consistent with applicable industry standards," who are required to be licensed and pass screening for sex offender status, criminal history, and drug use.

The contract further provides that Parque View "may, with the approval of Ranger Guard . . . issue written directions within the general scope of Security Services to be ordered. Such changes . . . may be for additional work or Ranger Guard . . . may be directed to change the direction of work covered by the Task Order, consistent with all applicable laws, but no change will be allowed unless agreed to by Ranger Guard . . . in writing." The record contains no allegation or evidence of any change made pursuant to this provision.

Ranger Guard assigned Dameon Roberson, who had been working for Ranger Guard since 2011, to provide the security services at Parque View. Roberson is a state-commissioned security officer. Roberson provided Ranger Guard with daily shift reports and lengthier incident reports when necessary to keep Ranger Guard informed of specific encounters that went beyond routine surveillance activities. He also provided copies of these reports to Parque View. For the several weeks preceding the September 2013 incident involving Henderson, Roberson reported:

- An occasion in which he "presented himself with arms" to the driver of a truck who was aggressively attempting to enter through an exit gate that was triggered open by a resident who was attempting to leave.

- An early-morning encounter with a resident that occurred when Roberson responded to a siren sounding in the parking lot. The resident refused to identify himself to Roberson and yelled and cursed at Roberson. Roberson approached the tenant with a telescopic baton in hand, and the resident retreated up the stairs and into his apartment. Roberson notified local police of the incident.

- An evening incident in which Roberson confronted an individual suspected for manually pulling the motorized exit gate open after having been instructed not to do so. Roberson displayed his stun baton, whereupon the individual left the property, identified as a resident, then was allowed to enter through the pedestrian gate.

During the same period, a few residents complained to the apartment management office that Roberson spoke rudely or "coarsely" to them. On two occasions, residents who apparently were unaware that security was patrolling the premises contacted local police to report uniformed individuals whom they believed were impersonating officers on the premises. Parque View, which believed it had previously taped notices to the residents' doors concerning the new security arrangements, did so again after these police reports occurred.

In the early hours of September 12, 2013, Henderson, a complex resident, pulled into the parking lot. Roberson noticed the car sitting in the lot while the driver remained inside. He approached Henderson's car and shined a flashlight into the driver's-side window. Roberson instructed Henderson to get out of the car. Henderson, however, remained in his car. Roberson then aimed a gun at Henderson

4

and insisted that he get out of the car. Henderson got out of the car and entered into a discussion with Roberson. The parties dispute how each behaved during that discussion. At some point, Roberson discharged his gun, shooting Henderson in the abdomen with a rubber bullet. Henderson sustained injuries, for which he received medical treatment. He continues to require medical treatment, medication, and physical therapy.

The trial court's summary judgment recites that Ranger Guard and Roberson

> were independent contractors of [Parque View] and, as such, [Parque View] owed no duty to the Plaintiff with regard to any negligence of Ranger Guard or Roberson. Because [Parque View] had no duty as to the Plaintiff relating to the activities of its independent contractors, they are entitled to judgment as a matter of law.

## DISCUSSION

## I. Standard of Review and Applicable Law

We review summary judgments de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). For a traditional motion for summary judgment like this one, the movant bears the burden to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). The defendant moving for traditional summary judgment must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Sci.*

5

*Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). We review the summary-judgment evidence in a light favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006); *see also Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005) (first citing *Provident Life & Accid. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003); and then citing *Martinez*, 941 S.W.2d at 911).

Both of the issues on appeal concern whether Parque View owed a legal duty to its residents. The existence of a duty is a question of law for the court to decide from the particular facts of the case. *Golden Spread Council, Inc. No. 562 of Boy Scouts of Am. v. Akins*, 926 S.W.3d 287, 289 (Tex. 1996) (citing *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990)). In deciding whether to impose a duty, we weigh several interrelated factors, including the risk, foreseeability, and likelihood of injury; the social utility of the actor's conduct; the magnitude of the burden of guarding against the injury; the consequences of placing the burden on the defendant; and whether one party had superior knowledge of the risk or a right to control the actor who caused the harm. *Id.* at 289–90 (citing *Graff v. Beard*, 858 S.W.2d 918, 920 (Tex. 1993)).

## II. Duty of Care in Retaining an Independent Contractor

Henderson acknowledges that Texas law does not impose liability on an employer for an independent contractor's tortious conduct unless the employer retains some control over the manner in which the contractor performs the work or the work itself involves a nondelegable duty, whether inherently dangerous or statutorily prescribed. *Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 795 (Tex. 2006). Henderson does not allege that Parque View retained any control over any of the details of Ranger Guard's work, and the contractual language does not allow any control without Ranger Guard's written approval. Accordingly, this rule precludes Parque View from being held vicariously liable for the conduct of Ranger Guard or its employees as a matter of law. Henderson further claims, however, that Parque View should be held directly liable for its own negligence in retaining the services of an allegedly incompetent security contractor.

As the basis for imposing a direct duty on Parque View for Roberson's conduct, Henderson points to the Texas Supreme Court's decision in *Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788 (Tex. 2006). In *Fifth Club*, a patron sued a nightclub for injuries that he sustained as a result of an altercation with an off-duty peace officer whom the club had hired as an independent contractor to provide security services. *Id.* at 790. The plaintiff asked the Court to recognize a personal character exception, recognized in some other jurisdictions, to hold employers or premises

owners directly liable for the acts of their independent contractors in the security context. *Id.* at 792–94.

The Court declined to recognize a personal character exception. *Id.* at 796. It noted that the Texas Legislature has not recognized a nondelegable duty recognized by the jurisdictions adopting such an exception, those being (1) a state-imposed nondelegable or personal duty to keep business premises safe, and (2) an articulated public policy that business owners should not benefit from an independent contractor's surveillance or protection of their property without also incurring liability for that contractor's unlawful conduct. *Id.* at 794–95.

Although it rejected recognition of an exception to the general rule that an owner or general contractor is not liable for the actions of an independent contractor over whom it exercises no control, the Court acknowledged that a "plaintiff could, and did, sue the nightclub alleging direct liability for negligent hiring." *Id.* at 796. Henderson relies on this acknowledgment as the basis for his negligent retention claim against Parque View.

*Fifth Club*'s consideration of the plaintiff's negligent hiring claim, however, does not support the theory that Henderson advances. In *Fifth Club*, the nightclub hired the individual officer as an independent contractor without performing a background check, requiring a job application, or interviewing him directly. *Id.* The Court, observing that the officer's status as a certified peace officer qualified him

for the security work, concluded that the plaintiff's evidence was legally insufficient to support a finding that the club was negligent in hiring or retaining the officer. *Id.* at 797. Contrary to Henderson's suggestion, the *Fifth Club* Court did not impute any nondelegable duty of care to an employer to ensure that an independent contractor properly performs the details of the work for which it was contracted. *See id.* at 796; *see also Redinger v. Living, Inc.*, 689 S.W.2d 415, 418 (Tex. 1985) (explaining that when negligence arises out of activity being performed under contract, duty to see that work performed in safe manner belongs to independent contractor and not party who hired independent contractor) (citing *Abalos v. Oil Dev. Co. of Tex.,* 544 S.W.2d 627, 631 (Tex. 1976)); *Motloch v. Albuquerque Tortilla Co.*, 454 S.W.3d 30, 33 (Tex. App.—Eastland 2014, no pet.) (same) (citing *Redinger*, 689 S.W.2d at 418).

Henderson's reliance on *Davis-Lynch, Inc. v. Asgard Techs., LLC*, 472 S.W.3d 50 (Tex. App.—Houston [14th Dist.] 2015, no pet.), is similarly misplaced. That case dealt with a staffing company that had contracted with an oilfield manufacturer. *Id.* at 57. The staffing company placed an administrative employee with the manufacturer as a receptionist. *Id.* Eventually, the manufacturer promoted her to head of accounting. *Id.* She was discovered to have embezzled over $15 million. *Id.* at 58. The manufacturer sued the staffing company for negligent hiring based on its failure to perform a criminal background check on the employee, who

9

had two prior misdemeanor theft charges, one that resulted in a conviction and the other a deferred adjudication. *Id.*

Our sister court held that the staffing company could not have foreseen that its placement of the employee as a receptionist for the manufacturer would create a risk of harm to others because of her employment duties. *Id*. at 67. The court also observed that after the manufacturer transferred the employee to another position in the accounting department, the parties' contract no longer required the staffing company to supervise her. *Id*. at 66. After the transfer, the manufacturer gained the exclusive right to control the employee's work and thus, the staffing company could not be sued by the manufacturer under a respondeat superior theory. *Id.* at 71.

The shift in control from the staffing company to the manufacturer makes *Davis-Lynch* inapposite to this case. Here, no such shift occurred: At all times, Roberson remained an employee of Ranger Guard and at no time did Parque View assume control over any of the details of Roberson's work.

Although Henderson points to incident reports relating interactions with other tenants, none of them involved violence or violation of the law. None of the evidence presented in the summary judgment records demonstrates that Parque View was aware that Roberson presented an unreasonable risk of harm to the public. *See Fifth Club,* 196 S.W.3d at 796–97. The security guard in *Fifth Club*, Officer West, had been reprimanded for using profanity, but the Texas Supreme Court concluded

10

that nothing in hiring West demonstrated to the property owner that West presented

a risk of harm to the public:

> As to negligence in hiring, the evidence indicates that even if Fifth Club had investigated West before hiring him, nothing would have been found that would cause a reasonable employer to not hire West . . . The evidence showed that West violated a requirement in the applicable peace officer manual by accepting employment at the club, and that his primary employer had reprimanded West for the use of a profanity to a member of the public. This evidence is not sufficient to have put Fifth Club on notice that hiring West would create a risk of harm to the public, even if Fifth Club had done a background check.

*Id.* (internal citation omitted). For the same reason, the court concluded that the

owner was not liable for negligently retaining its independent contractor:

> [N]o evidence was presented that West was an incompetent or unfit security guard such that Fifth Club was negligent in retaining him after he was hired. Fifth Club hired West as a security guard to assist in protecting its property and patrons, a job specially suited to a trained peace officer . . . there was no conflicting evidence that he was unfit for the security position prior to the incident in question.

*Id.* at 797 (internal citation omitted). Henderson presents evidence—coarse

language and rudeness—rejected as evidence supporting a negligent retention claim

for the independent contractor in *Fifth Club*. *Id.* Ranger Guard warranted

Roberson's qualifications for providing security services under the contract,

including that Roberson was a certified security guard. Ranger Guard supervised

Roberson's work at the apartment complex. Parque View was entitled to rely on

Ranger Guard's warranty and supervision. *Redinger*, 689 S.W.2d at 418 (rejecting

duty to see independent contractor's work performed in safe manner). Accordingly,

11

we hold that the trial court properly granted Parque View's motion for summary judgment on Henderson's claim for negligent hiring and retention of the independent-contractor security guard.

**III.   No Duty to Notify Residents of Security Presence at Parque View**

Henderson next contends that Parque View is liable for negligently failing to warn him of the presence of armed security guards at the complex.

A landowner who exercises control over the premises must use reasonable care to make the premises safe for the use of business invitees. *Lefmark Mgmt. Co. v. Old*, 946 S.W.2d 52, 53 (Tex. 1997). Stemming from this duty as well is the concomitant duty to warn invitees of hidden dangers presenting an unreasonable risk of harm. Henderson invites us to recognize that an apartment owner owes a duty to adequately warn its tenants of the presence of armed security on the premises. *See id*. In advocating for this duty of notice, Henderson points to evidence indicating that some tenants were not aware that armed security personnel were patrolling the premises.

In *Ross v. Texas One Partnership*, the Dallas Court of Appeals refused to recognize such a duty, concluding that premises owners should be able to hire independent contractors to provide armed security services for protecting their property without risking exposure to automatic liability for the negligent discharge of firearms by the independent contractor's employees. 796 S.W.2d 206, 215 (Tex.

App.—Dallas 1990, writ denied). In *Ross*, the plaintiff sued the owner of an apartment complex after he was shot by a security guard who was patrolling the complex. *Id.* at 209. As an exception to the general rule that a party cannot be held liable for harm caused by its independent contractor, the plaintiff posited that the hiring party be held liable for injuries caused by its independent contractor's failure to exercise the nondelegable duty of care in performing work that is inherently dangerous. *Id*. at 214–15. The *Ross* court, however, concluded that the work undertaken by the security company in that case was not inherently dangerous work. *Id.* at 215.

Texas precedent weighs against adopting an affirmative duty of notice in this case. Texas recognizes that premises owners or controllers owe a duty to use ordinary care to protect invitees from criminal acts of third parties if the owner knows or has reason to know of an unreasonable and foreseeable risk of harm to the invitee. *See Timberwalk Apts., Partners, Inc. v. Cain*, 972 S.W.2d 749, 756 (Tex. 1998); *Nixon v. Mr. Prop. Mgmt.*, 690 S.W.2d 546, 550 (Tex. 1985). In this case, Parque View was aware of an upsurge in criminal activity in the area, and it retained security services in order to protect the property and its tenants. The policy choice implicit in the rule recognized in *Timberwalk* and subsequent cases permits premises owners to undertake reasonable measures, such as contracting with a security service, to preserve a premise's safety from criminal activity without at the same

13

time being accused of creating a hidden danger. Henderson did not adduce evidence that the possession of the gun with rubber bullets was unlawful or unlicensed or that Parque View had any knowledge of any unlawful or unlicensed activity that caused the incident in question. Because Henderson has not demonstrated that Parque View knew or should have known that Roberson's activities on its premises were inherently dangerous, we hold that the trial court correctly concluded that Parque View was entitled to judgment as a matter of law on Henderson's failure-to-notify claim. *See Fifth Club,* 196 S.W.3d at 795; *Ross*, 796 S.W.2d at 215.

## CONCLUSION

We affirm the judgment of the trial court.


Jane Bland
Justice

Panel consists of Justices Keyes, Bland, and Huddle.

14