IN THE SUPREME COURT OF 
TEXAS
 
════════════
No. 06-1022
════════════
 
 
Del Lago Partners, Inc. and Del Lago 
Partners, L.P., 
doing business under the 
assumed name of 
Del Lago Golf Resort & Conference Center, 

and BMC-The Benchmark 
Management Company, Petitioners,
 
v.
                                                                                    

Bradley Smith, 
Respondent
 
════════════════════════════════════════════════════
On Petition for Review from 
the
Court of Appeals for the Tenth District of Texas
════════════════════════════════════════════════════
 
Argued December 6, 2007
                        

 
            
Justice 
Wainwright, dissenting.
 
            
Bradley Smith was seriously injured in a bar fight at the Grandstand Bar on the 
premises of the Del Lago Golf Resort & Conference 
Center (Del Lago) in Montgomery, Texas. Smith claimed, 
among other things, that Del Lago had a duty to take 
steps to preclude a fight or to remedy an 
unreasonably dangerous situation—the bar fight—once it arose. The trial 
court submitted the case to the jury on a premises liability charge and declined 
to submit the proposed negligent activity charge. The jury determined that Del 
Lago was liable and apportioned 51% of the damages 
award to it and assessed 49% against Smith. The trial court rendered judgment on 
the jury’s verdict, and the court of appeals affirmed.
            
We are once again presented with the question of when a premises owner or 
possessor is liable for the conduct of other persons that cause personal injury 
to an invitee on the property. Smith’s case turns on the alleged contemporaneous 
acts and omissions of the Del Lago staff and invitees 
in the Grandstand Bar as he has made no complaint about the “condition of the 
land.” Accordingly, this case presents not a premises liability but a negligent 
activity case, and the trial court erred by refusing to submit plaintiff’s 
proposed submission on negligent activity. Smith erred, however, by failing to 
appeal to this Court the trial court’s refusal of his negligent activity 
submission. Smith’s claim should not succeed on a premises liability theory 
because he failed to identify a necessary predicate of 
a premises liability claim—i.e., a physical defect in the condition of the 
premises. And Smith’s allegation of inadequate security fails as a premises 
claim because he did not establish an unreasonable risk of serious harm 
necessary for Del Lago to owe him a duty. Because the Court approves Smith’s recovery as a premises liability 
claim, I respectfully dissent.
I. Smith’s 
Claim Is Not One for Premises Liability
            
The days of the general demurrer when claims would live or die on the basis of 
the form of the pleading generally are gone. But the cause of action pled 
dictates the answers to important questions in a case. The pleading defines the 
elements of a claim, facts to be proven, potential defenses to recovery, and 
damages recoverable. A strict liability products claim is different from a 
negligence claim that seeks the same damages arising from the same product and 
the same incident. See Humble Sand & Gravel, Inc. v. Gomez, 146 S.W.3d 170, 181 (Tex. 2004). A simple breach of contract 
claim arising from a transaction is not a tort claim, artful pleading 
notwithstanding. See Sw. Bell Tel. Co. v. DeLanney, 809 S.W.2d 493, 494–95 (Tex. 1991). 
Similarly, a cause of action for premises liability is different from one for 
negligent activity. In Keetch v. Kroger Co. 
and Timberwalk Apartments, Partners, Ltd. v. 
Cain, we explained the difference between liability for negligent activity 
and liability for failing to remedy an unreasonable risk of harm arising from 
the condition of a premises:
 
“Recovery on a negligent activity theory requires that 
the person have been injured by or as a contemporaneous result of the activity 
itself rather than by a condition created by the activity.” Negligence in the 
former context means simply doing or failing to do what a person of ordinary 
prudence in the same or similar circumstances would have not done or done. 
Negligence in the latter context means “failure to use ordinary care to reduce 
or eliminate an unreasonable risk of harm created by a premises condition which 
the owner or occupier [of land] knows about or in the exercise of ordinary care 
should know about.”
 
Timberwalk Apartments, Partners, Ltd. v. 
Cain, 972 S.W.2d 749, 753 (Tex. 1998) (quoting Keetch v. Kroger Co., 845 S.W.2d 262, 264, 267 
(Tex. 1992)). In short, unlike a negligent activity claim, “a premises defect 
claim is based on the property itself being unsafe.” State 
v. Shumake, 199 S.W.3d 279, 284 (Tex. 
2006). 
            
In this case, Smith asserts he was injured when some members of his group of 
fraternity brothers and some members of a wedding party, all invitees, engaged 
in a fight at the Grandstand Bar, which had experienced no prior fights causing 
serious injuries. In this Court, rather than defend his position at the trial 
court that his cause of action was for negligent activity, Smith defends the 
trial court judgment on the premises liability claim. But this is not a case for 
damages caused by a pothole in a road, a slick floor from the misapplication of 
wax, a grape on a grocery store floor, the lack of adequate lighting in an 
apartment parking lot, or a trespasser’s criminal attack on invited guests at a 
business. Although a species of negligence, premises liability cases are 
predicated on a property possessor’s failure to warn or make safe dangerous or 
defective conditions on property; negligent activity cases arise from 
contemporaneous actions or omissions in the conduct of people. Smith’s case is 
about the conduct of people at the bar, but the trial court’s charge defines 
negligence “[w]ith respect to the condition of the 
premises,” and instructs the jury that Del Lago was 
negligent if “the condition posed an unreasonable risk of harm 
. . . .”[1] Smith did not identify any defective or 
dangerous physical condition of the premises.
            
The common law has recognized for a long time that the basis of a premises 
liability claim is a physical defect or condition on property. See Kallum v. Wheeler, 101 S.W.2d 225, 229 (Tex. 1937) 
(Where a building’s decayed wooden floor gave way injuring a guest, the Court 
held “it appears to be settled in this state that one in possession of premises 
is under a duty to exercise ordinary care to make them safe” for invitees.). 
Relying on section 343 of the Restatement (Second) of Torts, we held that “[a] 
possessor of land is subject to liability for physical harm caused to his 
invitees by a condition on the land.” Adam Dante 
Corp. v. Sharpe, 483 S.W.2d 452, 454 (Tex. 1972) (Pope, J.) (emphasis added); see also McKee v. Patterson, 271 
S.W.2d 391, 395 (Tex. 1954) (involving an allegedly slick floor as a dangerous 
condition on the premises), abrogated on other grounds by Parker v. Highland 
Park, 565 S.W.2d 512, 517–18 (Tex. 1978). Comments to section 343 discuss 
the “physical condition” of the land, the “actual condition of the premises and 
[duty] to make reasonably safe by repair or to give warning,” and potential 
dangerous qualities “of the place itself and the appliances provided therein . . 
. .” Restatement 
(Second) of Torts § 343 cmts. b, d, f (1965). The Restatement also distinguishes between 
“Activities Dangerous to Invitees” addressed in section 341A and the section 343 
topic of “Dangerous Conditions Known to or Discoverable by Possessor.” Id. §§ 341A, 343. The First Restatement recognized a 
similar dichotomy. Restatement (First) of Torts §§ 341, 
343 (1939). Although the Restatement (Third) of Torts collapses the 
differing duties, based on the status of the injured party, into a unitary 
standard, it continues to recognize the distinction between “conduct by the land 
possessor” and artificial or natural “conditions” on the land. See Restatement (Third) of Torts § 51 
(Tentative Draft No. 6, 2009).
 
•                                             
            
Opinions of this Court consistently illustrate that premises liability claims 
arise from physical conditions or defects on property, including: A pothole in a 
dirt road allegedly causing a driver’s neck injury, TXI Operations, L.P. v. 
Perry, 278 S.W.3d 763, 764–65 (Tex. 2009);
•                                             
            Ice 
from a soft drink dispenser making a grocery store floor slippery, Brookshire 
Grocery Co. v. Taylor, 222 S.W.3d 406, 407, 409 (Tex. 2006);
•                                             
An unstable metal and wood platform accessing a storage shed, CMH 
Homes, Inc. v. Daenen, 15 S.W.3d 97, 98–99 (Tex. 
2000);
•                                             
Leaking water making a basketball court slippery, City of San Antonio 
v. Rodriguez, 931 S.W.2d 535, 536–37 (Tex. 1996);
•                                             
Store abduction occasioned by premises owner’s disconnection of existing 
security alarm devices, poor external lighting, and failure to have two clerks 
on a late night shift, Havner v. E-Z Mart 
Stores, Inc., 825 S.W.2d 456, 457, 459 (Tex. 1992).
•                                             
Plant spray making a floor slick, Keetch v. Kroger Co., 845 S.W.2d 262, 264 
(Tex. 1992);
•                                             
Grapes from a self-service grape bin falling on 
the floor and making a grocery store floor slippery, Corbin v. Safeway 
Stores, Inc., 648 S.W.2d 292, 297 (Tex. 1983);
•                                             
An unlit apartment stairwell where there was no other exit route, 
Parker v. Highland Park, Inc., 565 S.W.2d 512, 513–14 (Tex. 1978);
•                                             
Misapplication of wax making a floor dangerously slick, State v. Tennison, 509 S.W.2d 560, 561 (Tex. 1974);
•                                             
Soapy foam making a spa floor slippery, Adam Dante Corp. v. 
Sharpe, 483 S.W.2d 452, 453–54 (Tex. 1972);
•                                             
Showroom rug alleged to be a tripping hazard, Seideneck v. Cal Bayreuther Assocs., 451 S.W.2d 752, 753 (Tex. 1970); 
and
•                                             
            A 
decayed wooden floor in a building through which a guest fell, Kallum v. Wheeler, 101 S.W.2d 225, 226–27 
(Tex. Com. 1937).
 
 
In contrast to physical conditions, 
we have recognized that negligent activity claims arise from:
 
 
•                                             
Failure to warn taxi drivers not to carry guns, Greater Houston 
Transp. Co. v. Phillips, 801 S.W.2d 523, 524–25 (Tex. 1990);
•                                             
Independent contractor’s operation of a mechanical pump on property, 
Abalos v. Oil Dev. Co. of Tex., 544 
S.W.2d 627, 628, 631 (Tex. 1976); and
•                                             
Failure to remove “rowdy” patrons before one such patron allegedly threw 
a bottle injuring another patron in a theater, E. Tex. Theatres, Inc. v. 
Rutledge, 453 S.W.2d 466, 467–68 (Tex. 1970).
 
 
Smith fails to implicate any premises 
condition at the Grandstand Bar in causing his injury.
            
Texas law also recognizes a duty of premises owners to take reasonable measures 
to prevent injury occasioned by the criminal conduct of trespassers, or third 
parties, if the type of harm is unreasonable and foreseeable. Timberwalk, 972 S.W.2d at 
756. We have analyzed these claims as premises liability claims. 
Assuming the existence of an unreasonable risk of harm, property owners have 
a duty to act within reason to prevent the harm if evidence of the Timberwalk factors establish 
foreseeability.[2] See e.g., Trammell Crow Cent. 
Tex., Ltd. v. Gutierrez, 267 
S.W.3d 9, 15 (Tex. 2008); Timberwalk, 972 S.W.2d at 757. 
            
In Timberwalk, we held that an apartment 
complex did not have a duty to protect a tenant from sexual assault by a 
stranger because that type of serious crime was not foreseeable. The injuries 
and criminal violations in the past had not made that type of crime one the 
premises owner knew or should have known was likely to occur, thereby prompting 
a legal duty to take reasonable precautions to prevent it. 972 
S.W.2d at 758–59. The Court approved the plaintiff’s pleading of the 
dispute as a premises liability case allegedly brought 
about by the defendants’ failure to provide adequate security measures and the 
absence of allegations that she was “injured by or as a contemporaneous result 
of any activity of defendants.” Id. at 753 (quoting 
Keetch, 845 S.W.2d at 264). The Court, 
significantly, noted that the alleged inadequate security measures included 
defective physical security-related components—missing “charley” bars or pin 
locks for sliding glass doors, inoperative alarm systems in the apartments, 
inadequate lighting, inoperative access gates to the complex and the absence of 
security guards. Id. at 751. 
            
In Trammell Crow, we again analyzed a dispute as a premises 
liability claim where plaintiff alleged negligently inadequate security to 
prevent a third party from shooting an invitee who was leaving a movie theater 
on the premises. 267 S.W.3d at 11–12. We held there was 
no duty to prevent the shooting because any prior criminal activity at the mall 
was not sufficiently similar and frequent to give rise to a duty to prevent the 
death. Id. at 17.[3] 
            
            
All of these cases raising premises liability claims for third party injury to 
persons legally on the premises concern, to some degree, the alleged failure of 
defendants to employ adequate security measures. These security measures could 
be inadequate lighting, disconnected existing alarm systems, broken pin locks 
for sliding glass doors, inoperative security gates, an unrepaired opening in a 
security fence, or the absence of guards for business parking lots. See 
Timberwalk, 972 S.W.2d at 751; Lefmark Mgmt. Co. v. Old, 946 S.W.2d 52, 55 
(Tex. 1997). These types of premises liability cases have in common the 
existence of defective physical conditions of the premises that allegedly 
allowed the criminal conduct to occur. The plaintiffs showed a nexus between 
their injuries and some physical defect or inadequacy in the property. Here, 
Smith implicates no physical condition of the property in his complaints. 

            
Accordingly, Smith appropriately offered a negligent activity charge in the 
trial court, and the trial court erred in refusing it. See Keetch, 845 S.W.2d at 264. He 
claims that the acts and omissions of the Grandstand Bar staff during the 
evening were negligent. However, Smith erred in failing to appeal the trial 
court’s improper submission of this case to the jury as a premises liability 
claim. Because the Court approves the award in this case on a premises liability 
charge (with respect to the “condition of the premises”), it opens almost any 
negligence dispute involving contemporaneous activities to being tried as a 
premises case. The Court’s opinion is untethered to 
our long line of precedents drawing a distinction between negligent activity and 
premises liability causes of 
action.           
                                    

II. Smith Fails to Show That the Risk of Harm Was 
Unreasonable
 
            
Smith also fails to establish that Del Lago owed a 
duty to prevent the type of injury he suffered. Premises owners are not 
obligated to insure the safety of invitees on their premises. However, a 
premises owner has a duty to protect invitees if he knows or has reason to know 
of an “unreasonable and foreseeable risk of harm to the invitee.” Timberwalk, 972 S.W.2d at 756 (quoting Lefmark, 946 S.W.2d at 53); see also TXI 
Operations, 278 S.W.3d at 764–65; Trammell Crow, 267 S.W.3d at 12; 
CMH Homes, 15 S.W.3d at 101; Exxon Corp. v. Tidwell, 867 S.W.2d 19, 
21 (Tex. 1993). The common law imposes this duty on premises owners based on the 
rationale that, as between an invitee and a premises owner, the premises owner 
is in the better position to know of and take precautions against the risk of 
such harm. Tidwell, 867 S.W.2d at 21.
            
Although foreseeability has received the lion’s share 
of the attention of Texas courts considering this duty, for premises owners to 
have a duty to protect invitees, the risk of harm must also be unreasonable. 
TXI Operations, 278 S.W.3d at 764; Lefmark, 946 S.W.2d at 53. The question is not 
whether the harm itself is unreasonable, but whether the risk of that type of 
harm occurring is unreasonable. A great harm may not, but a small harm may, be 
unreasonable, depending on the risk of it occurring.
            
To determine whether the risk of this type of harm was unreasonable, courts must 
weigh the type of risk involved, the likelihood of injury and its 
magnitude—including the nature, condition, and location of the defendant’s 
premises—and the harm to be avoided by imposing a duty, against the consequences 
of placing the burden on the defendant. See Trammell Crow, 267 S.W.3d at 
18 (Jefferson, C.J., concurring); Gen. Elec. Co. v. Moritz, 257 S.W.3d 
211, 218 (Tex. 2008); Timberwalk, 972 S.W.2d at 
759 (Spector, J., concurring); Greater Houston 
Transp. Co. v. Phillips, 801 S.W.2d 523, 525 (Tex. 1990); see also 
Ann M. v. Pac. Plaza Shopping Ctr., 863 P.2d 207, 212 n.5 (Cal. 1993) 
(explaining that courts weigh foreseeability of the 
harm against other factors, including the burden imposed on the premises owner); 
McClung v. Delta Square L.P., 937 S.W.2d 891, 902 (Tenn. 1996) (holding 
that duty is determined by balancing the likelihood and gravity of harm against 
the burden imposed on the premises owner to prevent the harm). For example, if a 
premises owner could easily prevent a certain type of harm, it may be 
unreasonable for the premises owner not to exercise ordinary care to address the 
risk. On the other hand, if the burden of preventing the harm is unacceptably 
high, the risk of the harm is not unreasonable. See Ann M., 863 P.2d at 215.
            
In determining whether Del Lago had a duty to protect 
against this type of crime, we consider whether Del Lago knew or should have known of the likelihood of this 
type of crime before Smith’s accident. The evidence shows only one crime and 
approximately four undocumented incidents per year in the Grandstand Bar, only 
one of which involved several people. Most of the incidents that had occurred at 
the Grandstand Bar, as the evidence shows, were relatively minor alcohol-induced 
physical and verbal altercations that quickly resolved without intervention, or 
minimal intervention, by Del Lago security. The 
likelihood of a fight at the bar involving several people was very low; nothing 
similar in size or scale had occurred in the past. See 
Trammell Crow, 267 S.W.3d at 17 (protecting premises owners from liability 
for “crimes that are so random, extraordinary, or otherwise disconnected”) 
(footnotes omitted). 
            
That does not end the analysis, however. In determining the likelihood of 
injury, case law focuses on the nature, condition, and location of the 
defendant’s premises to determine if Del Lago’s 
Grandstand Bar was a dangerous place or a relatively safe facility. Timberwalk, 972 S.W.2d at 759 (Spector, J., concurring). In this case, nothing about the 
premises indicates that this type of serious injury was imminent, as it never 
had occurred at Del Lago before. See Trammell 
Crow, 267 S.W.3d at 19 (Jefferson, C.J., concurring). The Grandstand Bar was 
part of an upscale resort. It did not border an area or particular establishment 
that posed a threat to Del Lago’s invitees, have a 
conspicuous lack of security that would encourage criminal behavior, or 
otherwise attract or indicate impending criminal activity. The lack of such 
evidence here weighs against imposing a duty on Del Lago.
            
The likelihood of Smith incurring this type of serious injury was relatively 
low. Again, we examine the harm to be avoided from Del Lago’s perspective before the fight that injured Smith. The 
typical harm resulting from the incidents at the Grandstand Bar that previously 
occurred and were most likely to occur again—alcohol-induced scuffles—resulted 
in only minor injuries, such as bruises and scrapes. Even a larger-scale scuffle 
would typically involve only those same types of minor injuries, but perhaps to 
more than one person. See Trammell Crow, 267 S.W.3d at 19 (Jefferson, 
C.J., concurring) (“Because the relatively few incidents of violent crime at the 
Quarry Market during the two-year period before Gutierrez’s death did not pose 
an unreasonable risk of harm, and in light of the tremendous burden that would 
be required to prevent such brazen attacks, I would hold that Trammell Crow owed 
Gutierrez no duty to prevent this crime.”).
            
Weighing the above considerations against the burden to be imposed on a premises 
owner, the law considers not the burden of preventing crime on the premises of 
Del Lago in general, but the imposition of a further 
duty to prevent this particular type of serious crime from occurring in the 
Grandstand Bar itself. Smith also argues that Del Lago 
had a duty to post a security guard in the bar. The security personnel at Del 
Lago were experienced and well-trained. They consisted 
of two off-duty police officers, Shenandoah Chief of Police John Chancellor and 
Lieutenant Lanny Moriarty of the Montgomery County 
Sheriff’s Office, who had a combined fifty years of police experience, as well 
as Director of Security and Safety Ruben Sanchez, a twenty-year veteran fireman 
and paramedic, and the Manager-on-Duty Ken Jeffrion. 
Smith did not dispute at trial that the size of the security staff was adequate. 
On the night in question, Chancellor and Moriarty were patrolling together in a 
golf cart on the grounds of Del Lago, which included 
the golf course, a group of cottages, and a hotel. Del Lago had a substantial security force.[4] Reallocating the security guards from 
patrol could leave the rest of the premises understaffed, especially when most 
of the documented crimes—and arguably the more serious incidents—occurring on 
the resort premises did not occur at the Grandstand Bar, but instead on other 
parts of the 300 acres. 
            
Although Del Lago could have taken extraordinary 
measures to prevent this type of bar altercation, the law does not require 
premises owners to take draconian measures to prevent all unlikely but 
theoretically conceivable types of crime. Timberwalk, 972 S.W.2d at 756; see also Boren v. 
Worthen Nat’l Bank of Ark., 921 S.W.2d 934, 941–42 
(Ark. 1996). It is neither feasible nor desirable to impose such a requirement 
because of both the additional cost and the chilling effect it could have on the 
activities of invitees. While there may have been a risk of alcohol-induced 
altercations in the Grandstand Bar, the frequency, recency, and severity of prior incidents do not indicate 
that the risk of harm of this magnitude was unreasonable. Del Lago may have had a duty to act reasonably to prevent the 
typical scuffle from occurring at the Grandstand Bar, but that duty is less 
onerous than the one Smith demands and would not impose an inordinate burden on 
Del Lago. However, to require Del Lago to take further security measures—including, for 
example, the added cost of increased security training for all personnel and 
adding at least one stationary guard in the Grandstand Bar—would impose 
unreasonably large costs in order to prevent a type of crime that had never 
before occurred at the resort and may never occur again. See Posecai v. Wal-Mart Stores, Inc., 752 So. 2d 762, 768 
(La. 1999) (“The economic and social impact of requiring businesses to provide 
security on their premises is an important factor.”). 
            
The analysis of whether the risk of crime is unreasonable must always be 
determined based on what the premises owner knew or should have known before the 
criminal act occurred. Del Lago took many, 
considerable steps to avoid risks of reasonable harm. The security at the Del 
Lago resort that evening was very experienced and 
well-trained, and the adequacy of the number of guards on duty that night was 
not questioned. In this case, I would hold that the burden on the defendant 
outweighs the likelihood, magnitude, and risk of harm to be avoided, taking into 
account the visible presence of security guards and their quick response 
time,[5] the added cost and inconvenience of 
having additional personnel, allocating existing personnel differently, or 
requiring additional training—all designed to prevent an unprecedented, albeit 
dangerous, fight. Because there was not an unreasonable risk of a barroom fight 
occurring and a serious injury resulting therefrom, 
Del Lago had no duty to protect against the risk of 
serious harm. 
            
The Court argues that the jury’s verdict should supercede our determination of the duty issue. That approach 
places the cart before the horse because the existence of a duty is a predicate 
to liability in tort. Moritz, 257 S.W.3d at 217; see also Palsgraf v. Long Island R.R., 162 N.E. 99, 101 (1928) 
(“The question of liability is always anterior to the question of the measure of 
the consequences that go with liability.”). In the landmark case of Palsgraf, the court held, with Chief Judge Benjamin 
Cardozo writing, that whether action is required to prevent harm is a question 
of duty. Palsgraf, 162 N.E. at 101. 
Disagreeing with the court, dissenting Justice Andrews asserted that 
predicating negligence on the existence of a legal duty to take care is “too 
narrow a concept.” Id. at 102 (Andrews, J., 
dissenting). He believed that “[w]here there is the unreasonable act, and 
some right that may be affected there is negligence . . . .” Id. 
“Everyone,” he wrote, “owes to the world at large the duty of refraining from 
those acts that may unreasonably threaten the safety of others.” Id. at 103. Texas law does not define duty so 
expansively or, as the Palsgraf dissent, 
restrict limitations on duty only to the role of proximate cause. Id. 
Similarly, a duty arises from risks of harm that are both foreseeable and not 
unreasonable for premises owners to prevent. 
            
Finally, the Court’s description of the evening suggests that there was both a 
foreseeable and unreasonable risk of serious harm. First, there is no evidence 
that a serious injury ever occurred previously at the Grandstand Bar, described 
by the parties as an upscale bar. Establishing foreseeability or an unreasonable risk of serious harm in 
this case is a difficult climb. Second, the evidence does not portray a caldron of escalating events leading inevitably to a huge 
brawl. The testimony presented at trial paints a somewhat different picture of 
the events of the evening. No doubt the atmosphere in the Grandstand Bar was not 
calm and peaceful all evening. Members of the two groups exchanged heated words 
that night, and the physical confrontations in the bar happened “off and on” 
over the course of the evening. Smith and fraternity brothers Toby Morgan, 
Spencer Forsythe, and Michael Brooks testified that they witnessed shoving 
between some group members before the fight, but those 
situations diffused on their own. These incidents resolved themselves without 
staff intervention. Both Arlene Duncan and Elizabeth Sweet, 
the bartender and cocktail waitress on-duty that night, testified that they 
certainly would have called security had they seen assertive physical behavior 
that would have led to a fight. “Tensions” between bar patrons alone do 
not constitute an unreasonably dangerous situation. Although there were people 
in the bar not part of either the fraternity reunion or the wedding party, Smith 
presented no evidence that even one bar patron complained about the behavior of 
the fraternity or wedding party members, called security, requested that 
security be called, left the bar to escape the situation, or otherwise expressed 
concern for his physical safety, either in word or deed. 
            
In addition, the Court claims that the fight was a “closing-time melee involving 
twenty to forty ‘very intoxicated’ customers.” The evidence shows that a number 
of people were in the area of the fight but only two to four people were 
involved in the actual fight. The length of the fight is also characterized as 
lasting fifteen minutes. Only one of the testifying witnesses stated that the 
fight lasted fifteen minutes. The other witnesses stated that the fight lasted 
between ten seconds and five minutes. This time frame is corroborated by the 
fact that when the first security officer arrived (within twenty seconds of 
being called), the fight was over. Though the Court disclaims creating a 
universal duty of these premises owners to prevent serious harm in these 
situations, its opinion paves a road in that direction. 
III. If a Duty Arose to Act During the Fight, the Standard of Conduct to Which Del Lago Is Held Is Very High 
 
            
The case was submitted to the jury on a premises liability charge, and the Court 
confirms liability against Del Lago on a negligent 
activity analysis. If the case had been submitted as a negligent activity claim, 
then the jury would properly have considered whether Del Lago breached its duty to use ordinary care to make the 
premises reasonably safe once the altercation broke out. See E. Tex. Theatres, Inc. v. Rutledge, 453 S.W.2d 
466, 469–70 (Tex. 1970). Smith argues that the Bar staff should have 
taken timely steps to stop the altercation. On the issue of breach of that duty, 
the evidence shows that the security personnel’s response times that evening 
were exemplary,[6] and the liability 
finding in spite of the security response would be concerning, but for some 
evidence of delay in calling security sufficient that the jury could conclude 
that Del Lago breached this duty, as the facts show. 

            
Once the fight began, the bartender and one of the waitresses took action. 
Duncan immediately attempted to break up the fight, while Sweet called security. 
Sweet testified that she was in shock when the fight arose, such that she could 
not immediately find the number. A sticker on the phone itself instructed “Dial 
0 for Emergency,” which directly connected to Del Lago’s security when dialed. Instead, the waitress dialed 
the front desk, obtained the number for security, and then quickly gave it to 
another bar employee to alert security. Smith does not argue that the delay by 
the waitress in calling the front desk rather than security directly was a 
breach of Del Lago’s duty. That is the only delay in 
this sequence of events that occurred that could constitute a breach. Del Lago’s security force responded promptly to the calls. 
Sanchez, the first officer on the scene, arrived at the bar fifteen to twenty 
seconds after being called, and the fight was over when he got there. The other 
two officers arrived after Sanchez, within two to three minutes of being called. 
None of these facts is disputed. These are the response times we want in 
security personnel. I am persuaded not to conclude that Del Lago did not breach its duty in this regard only because of 
the one piece of evidence that is barely sufficient but on which the jury could 
conclude there was a breach—i.e., the waitress’s testimony that it took her 
about three to four minutes to get the proper telephone number and give it to 
another employee to make the call to security. I would be concerned if the 
message from the Court is to hold premises owners to a standard of perfection, 
instead of a standard of reasonable care. 
IV. Conclusion
            
Because I believe the case was improperly submitted as a claim that it is not, I 
respectfully dissent. This dispute is either a premises liability case for 
alleged inadequate security (Smith’s only allegation that raises a premises 
liability claim) or a negligent activity claim based on the contemporaneous acts 
or omissions of the Del Lago personnel and invitees, 
or it may be both if plaintiff articulates different facts in support of both 
claims. The charge for a negligent activity claim should not instruct the jury 
to find a dangerous “condition of the premises” as that finding addresses 
premises liability. I agree with the Pattern Jury Charge comment on this point 
that because the elements of these two theories are different, “it is important 
to submit the questions, instructions, and definitions that are applicable to 
the particular theory.” Comm. On Pattern 
Jury Charges, State Bar of Tex., Texas Pattern Jury Charges–Malpractice, 
Premises, Products PJC 65.1 (Comment), at 121 (2006). Submission of a 
premises liability charge for a negligent activity claim muddles the duties and 
undermines clarity in the law.        
 
 
 
                                                                                    
                                                            

                                                                                    
Dale Wainwright
                                                                                    
Justice
 
OPINION 
DELIVERED:    April 2, 
2010






[1] The full text 
of the jury question follows:
 
Did the negligence, if any, of 
those named below proximately cause the occurrence in 
question?                 

With respect to the condition of 
the premises, Del Lago was negligent if—
           
a. the condition posed an unreasonable risk of harm, 
and
b. Del Lago knew or reasonably should have known of the danger, 
and
c. Del Lago failed to exercise ordinary care to protect Bradley 
Smith from the danger, by both failing to adequately warn Bradley Smith of the 
condition and failing to make that condition reasonably safe.
“Ordinary Care,” when used with 
respect to the conduct of Del Lago as an owner or 
occupier of a premises, means that degree of care that would be used by an owner 
or occupier of ordinary prudence under the same or similar 
circumstances.
            

This is the Pattern Jury Charge submission for premises 
liability claims in which plaintiff is an 
invitee. State Bar of Tex., Texas Pattern Jury 
Charges–Malpractice, Premises, Products PJC 66.4, at 137 
(2006).

[2] The Timberwalk factors are “whether any criminal conduct 
previously occurred on or near the property, how recently it occurred, how often 
it occurred, how similar the conduct was to the conduct on the property, and 
what publicity was given the occurrences to indicate that the landowner knew or 
should have known about them.” Timberwalk, 
972 S.W.2d at 757.

[3] Mellon 
Mortgage Co. v. Holder is a difficult case to categorize. 5 S.W.3d 654 (Tex. 1999). In Mellon, an on-duty 
police officer stopped Holder, took possession of her drivers license, and instructed her to follow him. 
Id. at 654. He led her to Mellon Mortgage’s 
parking garage and assaulted her in his squad car. Id. Plaintiff sued 
Mellon Mortgage. Id. The Court was sharply divided in the case as there 
was only a plurality opinion. See generally id. No invitees were injured 
by third parties who came onto the property, and there was no contemporaneous 
activity that the premises owner knew or should have known about. Id. 
This case does not fit neatly under the typical premises liability or 
negligent activity rubric. Without determining whether Holder was an invitee, 
licensee, or trespasser, the Court resolved the case by concluding no duty arose 
in any event because foreseeability principles limited 
the scope of the defendant’s duty. Id. at 
658.
 

[4] If I were 
considering foreseeability, applying the Timberwalk factors to the claim that there was a duty 
to place security guards in the bar would result in the conclusion that, based 
on past experience, it was not foreseeable that a serious injury would occur. 
The evidence showed twelve prior crimes on the 300-acre Del Lago resort property in the three years preceding Smith’s 
assault. Four of the twelve crimes were assaults in or near the Grandstand Bar, 
and eight were assaults in other portions of the resort. Officer Chancellor, 
employed by Del Lago, testified that he was called to 
the Grandstand Bar approximately five times per year for incidents that received 
no documentation. Officer Sanchez estimated he is called to the Grandstand Bar 
every two to three months to intercede in an argument. None of the incidents was 
of a magnitude to cause serious injury to the persons involved. Hence, there was 
no duty to provide security guards in the bar or additional security at Del 
Lago.

[5] The first 
officer was on the scene of the fight about twenty seconds after being called. 
Two others arrived within two or three minutes of being called.

[6] The security personnel at Del Lago that evening included three officers with some seventy 
years of combined law enforcement and paramedic experience.